**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0702n.06

No. 13-1616

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 08, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| JOHN ROBERT KENNEDY, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: SUHRHEINRICH, MOORE, and WHITE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** John Robert Kennedy appeals his convictions after a jury trial on counts charging manufacture and possession of a destructive device as well as his sentence. The main question at Kennedy's trial was whether the device he planted near a hardware store was a "destructive" device. Kennedy also pleaded guilty to two other counts. Kennedy presents three claims of error. First, Kennedy claims that the trial court admitted non-probative, prejudicial evidence at trial. Second, he claims that the trial court presented the jury with incorrect and incomplete instructions. Finally, he claims that his sentence is substantively and procedurally unreasonable for a host of reasons. Some of the evidence introduced at trial and challenged by Kennedy was probative of elements of the crime including whether the device was indeed a destructive device. Although non-probative evidence was introduced, that error was harmless. The jury instructions, while incomplete, nevertheless provided the jury with an accurate statement of the law elsewhere. Consequently, any omission

was substantially covered by other parts of the jury charge, and that error was harmless as well.

The district court correctly scored the guidelines that led to the sentence. However, the district

court failed to explain why it was rejecting a nonfrivolous argument for a downward variance.

Therefore, we AFFIRM the judgment of conviction, but VACATE the sentence and REMAND

for consideration of Kennedy's argument for a downward variance.

## I. BACKGROUND

Kennedy was indicted by a grand jury on six charges.[1] Count one and count five, to

which he pled guilty, charged him with being a felon in possession of explosives, 18 U.S.C.

§§ 842(i) and 844(a), and with being a felon in possession of ammunition, 18 U.S.C. § 922(g)(1).

Count two, count three, and count four, of which Kennedy was convicted after a jury trial,

charged him with possession of an unregistered firearm, 26 U.S.C. § 5861(d), with being a felon

in possession of a firearm, 18 U.S.C. § 922(g)(1), and with manufacture of a firearm in violation

of the National Firearms Act, 26 U.S.C. § 5861(f). In each case, the firearm was actually a

destructive device as defined by 18 U.S.C. § 921(a)(3)(D), (a)(4) and 26 U.S.C. § 5845(a)(8), (f).

The destructive device that he was charged with manufacturing and possessing was found near

an ACO hardware store in Trenton, Michigan.

In his opening statement, defense counsel for Kennedy admitted that Kennedy placed the

device near the hardware store:

---

[1]Count six—possession of body armor by a person previously convicted of a felony crime of violence—was dismissed before trial because the parties agreed that none of Kennedy's previous convictions constituted the requisite crime of violence.

Now, I want to try to make this as straightforward as possible, because we just heard a lot of evidence that's going to come out in this case. The only issue is going to be whether this was a destructive device at Aco Hardware on April 29th, 2011. That's the only issue.

He admits to making it. He admits to putting it there. He admits to all the elements that we've stipulated to. He's already ple[]d guilty to possession of chemicals related to this case that he wasn't supposed to have. I mean we're not saying he's a choir boy, but the question is was this device at Aco a destructive device.

R. 58 (Trial Tr. at 145) (Page ID #511). Kennedy's defense at trial was that the device Kennedy placed near the hardware store did not fit the statutory definitions of a destructive device;[2] it was not an explosive or incendiary bomb, but rather a smoke mix.

---

[2]Under the indictment, destructive device for count two and count four is defined as:
  (f)  Destructive device.--The term "destructive device" means
        (1)  any explosive, incendiary, or poison gas
              (A)  bomb,
              (B)  grenade,
              (C)  rocket having a propellent charge of more than four ounces,
              (D)  missile having an explosive or incendiary charge of more than one-quarter ounce,
              (E)  mine, or
              (F)  similar device;
        (2)  . . . ; and
        (3)  any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.
  The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; . . . .

26 U.S.C. § 5845(f).

For count three, destructive device is defined as:
        (4)  The term "destructive device" means--
              (A)  any explosive, incendiary, or poison gas--
                    (i)  bomb,

3

The device at issue was first found on April 29, 2011 in the Aco Hardware parking lot. That evening, a customer who had left the store returned and told an employee, Tina Simcox, that she thought something had exploded in the lot outside the store. Simcox observed a 5 to 6 foot plume of smoke dissipating in the air. However, Simcox noted that no damage had been done and went back into the store. Simcox decided this was a prank and did not call the police. On May 4, 2011, James Rzepa, after leaving the hardware store, found a watch with attached wires and a small box lying in the wood mulch near a bush. He called the police.

An investigation of a bomb threat at Trenton High School, along with a device found at the school that appeared to be a bomb, but lacked explosive materials, led the police to Kennedy. They conducted a search of two homes where Kennedy lived—his mother's home in Michigan and the home of his girlfriend in Indiana. The police discovered a vast array of evidence that led

---

      (ii)   grenade,
     (iii)  rocket having a propellant charge of more than four ounces,
     (iv)  missile having an explosive or incendiary charge of more than one-quarter ounce,
      (v)   mine, or
     (vi)  device similar to any of the devices described in the preceding clauses;

(B)   . . . , and

(C)   any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; . . . .

18 U.S.C. § 921(a)(4).

4

them to conclude that Kennedy planted not only the Trenton High School device but also the device in the hardware store parking lot.

This evidence included baggies of unknown powders, liquid-filled cylinders, pepper spray, medicine bottles, homemade initiators that could be used in a destructive device, road spikes that could be used as fragmentation, and electronic data that included manuals on guerilla warfare tactics and methods of making military explosives at home, books on overthrowing the government, an application for Iranian citizenship, a pulse gun, grenade fuses, smoke-mixture recipes, cell-phone jammers, initiation triggers, components for improvised explosive devices ("IEDs"), flash grenades, chlorine gas, remote detonators, books about detonators, incendiaries, and improvised explosives, a laptop, and a variety of chemicals. There were also extensive writings in which Kennedy had mapped out the two targets—the hardware store and high school—and a script for the high school bomb threat. A diary included instructions for making detonators, diagrams for building different types of triggers, and recipes for incendiary mixes. A notebook contained a detailed plan to rob a jewelry store next to the hardware store. It included a sketch of the store's layout, an escape route map, and a detailed to-do list. Kennedy even included reminders on what to bring before attempting the robbery. Another notebook confirmed the plan with a to-do list of necessary items crossed off.

Trial testimony revealed that while the device at Trenton High School contained only sugar, the device at the hardware store had residues of chlorate, perchlorate, nitrate, and sugar. An ATF agent, Meghan Miller, testified that this blend of chemicals was an explosive mixture.

She also testified that there was thermal damage to the battery pack and watches consistent with an explosion in the hardware-store device. She did concede that the device could have been merely a smoke device and that there was no way to determine whether it was an explosive or smoke device. She, however, believed that it was an explosive device because of the thermal damage it caused, which a smoke device would not cause, and because smoke devices often have other chemicals which were missing from this device. Another ATF agent, Michael Eggleston testified that the device had all of the necessary components of a destructive device and was capable of exploding. He concluded that scorching and property damage near the device was evidence of thermal impact from a small explosion. Eggleston conceded during cross-examination that no container was found with the explosive chemicals,[3] but asserted that the container was consumed in the explosion.

Defense expert, Dirk Hedglin, a former ATF agent and forensic chemist, testified that the chemicals found in the hardware-store device could have been a smoke mix rather than an explosive mix, but that there was no way to tell the ratio of the chemicals to determine whether this device contained a smoke mix or an explosive mix. Hedglin also opined that the device needed a container to explode, and that fragments of the container would be found after an explosion. Retired Michigan State Police Officer David Balash, testifying for the defense, argued that the chemicals in this case would create a smoke mix unless they were placed in a rigid and sealed container capable of building pressure. The lack of container fragments,

---

[3]The chemicals used were "low" explosives, which typically must be placed in a container, in which pressure can build, in order to create an explosion.

according to Balash, suggests that no container was present because he would expect to see fragments as well as a crater at an explosion site. In rejecting that the device exploded, Balash also stated that it was "an incendiary type item," and that he believed such an incendiary device was still a destructive device under 26 U.S.C. § 5845. R. 63 (Trial Tr. at 753) (Page ID #1119).

With the conflicting expert testimony, the defense argued that the device was not an explosive device and was not designed as a weapon. Kennedy requested that an instruction regarding his affirmative defense be included in jury instructions:

> Affirmative Defense
> (1)   One of the questions in this case is whether the defendant designed the charged device as a weapon.
> (2)   Under the law, a device that is not designed as a weapon cannot be a destructive device.
> (3)  The government has the burden of proving that the device was designed as a weapon. Unless the government proves this beyond a reasonable doubt, you must find the defendant not guilty.

Appellant Br. at 38. Kennedy also noted that the court's proposed instructions varied between the definition of a destructive device under 26 U.S.C. § 5845(f) and under 18 U.S.C. § 921(a)(4). Kennedy argued that the definitions should be identical.

The district court's final instructions to the jury under 26 U.S.C. § 5845(f) provided:

> (f)  Destructive device.--The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; ..... and (3) any combination of parts either  designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon,

> which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device.....

R. 39 (Jury Instructions at 22) (Page ID #209). Kennedy believed this instruction was a correct statement of the law. The jury instructions under 18 U.S.C. § 921(a)(4) provided that a destructive device is:

> (A) any explosive, incendiary, or poison gas, bomb, grenade, rocket having a propellant charge of more than four ounces; missile having an explosive or incendiary charge of more than one-quarter ounce; mine, or device similar to any of the devices described in the preceding clauses;
> (B) .....
> (C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

R. 39 (Jury Instructions at 29) (Page ID #216). Kennedy argued that this instruction was not a correct statement of the law and had convinced the prosecution that the earlier definition accurately reflected the law and should be used in both locations. The district court, however, rejected this change requested by both parties. Moreover, the court failed to include the affirmative defense instruction despite stating that it would do so.

The jury found Kennedy guilty on all three of the remaining counts. The PSR calculated the guideline range to be 87 to 108 months of imprisonment, reflecting a four-level firearm (destructive device) enhancement under U.S.S.G. § 2K2.1(b)(6)(B). The court also did not credit Kennedy with acceptance of responsibility under § 3E1.1. The court sentenced Kennedy to a 108-month term of imprisonment followed by three years of supervised release. Finally, the court ordered Kennedy to pay a $20,000 fine.

## II.  DISCUSSION

### A.  Admission of Evidence

Kennedy argues that the admission of an array of prejudicial materials found in the searches of the two homes he occupied violated Federal Rule of Evidence 404(b).  "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  The district court allowed the evidence to be admitted "for the purpose of showing, among other things, criminal disposition or intent."  R. 56 (Trial Tr. at 5) (Page ID #371).

#### 1.  Standard of Review

Under Federal Rule of Evidence 404(b), this court applies a three-step test to determine whether other acts evidence is admissible.  *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).  In the first step, the district court must determine that the other act actually occurred.  *Id.* In the second step, the district court must determine "whether the evidence of the other act is probative of a material issue other than character."  *Id.*  Finally, in the third step, the district court must evaluate "whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect."  *Id.*  The first step is reviewed for clear error.  *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012).  The second step is reviewed de novo to determine whether the legal determination was correct.  *Id.*  The third step is reviewed under an abuse of discretion standard.  *Id.*

The government argues that the evidentiary rulings should be reviewed for plain error because the objection was not preserved. Kennedy objected to the introduction of this evidence in a motion *in limine*. The district court denied the motion without objection to its renewal. Kennedy then renewed the motion at the beginning of the trial as a continuing objection. R. 58 (Transcript at 121–22) (Page ID ##487–88). The trial judge replied to this objection by acknowledging to defense counsel "you have a continuing objection and unless something different happens you need to speak to, you don't need to repeat it; you've got it." *Id.* at 122 (Page ID #488). In doing so, "the trial court has made an explicit and definitive ruling on the record of the evidentiary issues to be decided, and has not indicated that the ruling is conditioned upon any other circumstances or evidence." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). In fact, the trial judge explicitly told defense counsel that she did not need to restate her objection in the future.[4] Consequently, "counsel need not renew the objection at the time the evidence is offered (or would have been offered but for an exclusionary ruling) in order to preserve the error for appeal." *Id.* Any other rule that requires defense counsel to continue objecting over a statement by a trial judge that an objection need not be repeated not only would disturb the proceedings unnecessarily, when the trial judge has already made a final decision on the admissibility of evidence, but also would put defense counsel in the unenviable position of having to raise an objection repeatedly to preserve the issues for appeal in the face of a trial

---

[4]Defense counsel, nevertheless, repeatedly noted her previous objection during the trial as exhibit after exhibit was admitted in evidence.

judge who has told her not to do so. We conclude that Kennedy's objection to the vast array of evidence has been preserved properly.

## 2. Evidence Admitted

Kennedy challenges whether the admitted evidence was probative of a material issue other than character and whether its probative value was substantially outweighed by its potential unfair prejudicial effect. Thus, he challenges "whether the evidence of the other act is probative of a material issue other than character," *Jenkins*, 345 F.3d at 937, step two of the district court's inquiry, which we review de novo, and "whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect," *id.*, step three of the district court's inquiry, which we review under an abuse of discretion standard. Particularly, Kennedy argued that the evidence had no probative value because the sole factual question was whether the device was a destructive device.

Kennedy's evidentiary challenge was quite broad because of the enormous amount of evidence submitted to the jury.[5] The evidence included electronic components that could be used in making a destructive device, chemicals, tools, diaries and journals that included Kennedy's planning, manuals explaining how to create bombs and other types of weapons, books, and even internet searches and images, including images of terrorist attacks.

We review de novo whether this evidence had any probative value to material issues in the case. *Clay*, 667 F.3d at 693. Our de novo review of the admitted evidence reveals that while

---

[5]At oral argument, appellate counsel for the government characterized government trial counsel's submission of this evidence as "unthoughtful" and "unfocused." We do not disagree with that characterization.

some of the challenged evidence has significant probative value to material issues in the case, other evidence admitted by the district court does not have any probative value. For example, the district court admitted evidence that Kennedy applied for Iranian citizenship in 2004. The district court also admitted a copy of The Turner Diaries, a 1978 fictional novel depicting a violent revolution in the United States leading to the overthrow of the government and a race war.

Evidence that "has any tendency to make" the existence of a fact that "is of consequence in determining the action" "more or less probable than it would be without the evidence" is relevant. Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009). Despite such a liberal standard, we conclude that neither of these pieces of evidence is relevant to any of the elements of the crimes with which Kennedy was charged. It was error for them to have been admitted.

However, before we reverse the convictions, the improper admission of this irrelevant evidence must survive a harmless-error analysis under Federal Rule of Criminal Procedure 52(a). "[H]armless error analysis requires this court to consider whether the particular evidence prejudiced the outcome of the trial and resultant convictions." *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). The admission of this irrelevant evidence did not prejudice the outcome of the trial. Although irrelevant evidence was admitted, it could not have had anything but a de minimis effect on the jury. The Turner Diaries were admitted as exhibit 167. R. 62 (Trial Tr. at 604) (Page ID #970). However, this was included in a long list of items being

admitted. *See id.* The prosecution asked the witness to identify exhibit 167, to which the witness replied, "The Turner Diaries. This is a fictional account of the overthrow of the United States." *Id.* No other mention of the book was made. And, even though the book was available for the jury to review, it was never requested by the jury. Similarly, the exchange over the Iranian citizenship application was quite limited:

> Q  Was there any kind of evidence that was found that [Kennedy] showed an interest in any kind of terrorist activities of other countries?
> A  Yes, ma'am.
> Q  Okay. And what would that be?
> A  He had applied for citizenship in 2004 to the Republic of Iran.
> Q  And what was the evidence of that that was found in the items that were seized from Indiana?
> A  A letter from the Embassy of Pakistan denying him citizenship to Iran.

*Id.* at 608 (Page ID #974). While the suggestion that Kennedy "showed an interest" in the "terrorist activities of other countries" is prejudicial, the actual evidence admitted was a letter denying his application from seven years before this incident. The jury was not led to conclude that the device Kennedy placed in a Michigan parking lot in April 2011 was an explosive or incendiary bomb rather than a smoke mix because he had applied for Iranian citizenship in 2004. Thus, we conclude that the district court's improper admission of irrelevant evidence was harmless.[6]

---

[6]While in this opinion we explicitly analyze only two pieces of evidence which were highlighted in the defendant's briefing and at oral argument, we reviewed and analyzed every exhibit submitted to the jury to determine whether each was relevant. Some others, for example, images from Kennedy's computer depicting blast scenes, were also irrelevant, but again, all of the irrelevant evidence admitted by the trial court did not "prejudice[] the outcome of the trial and resultant convictions." *Gibbs*, 182 F.3d at 430.

Over Kennedy's objection, the district court also admitted evidence such as electronic components, chemicals, tools, and manuals explaining how to create bombs and other types of weapons. Kennedy claims this evidence was either not relevant at all or that its probative value was substantially outweighed by its potential prejudicial effect. This evidence, however, was relevant, and we review the district court's conclusion that its probative value was not substantially outweighed by its potential prejudicial effect for an abuse of discretion. *Clay*, 667 F.3d at 693.

In making the argument that this evidence of Kennedy possessing bomb components is irrelevant, Kennedy claims that there was only one issue for the jury to decide. In his opening, defense did state that Kennedy admitted to making the device. But this admission was not evidence. The prosecution, as in every criminal case, had to prove each element of the crime, including identity. Thus, the prosecution had to prove that Kennedy possessed the device, that he knowingly made the device, and that he knew what made it destructive. R. 39 (Jury Instructions at 19–20, 25, 31) (Page ID ##206–07, 212, 218). The evidence introduced was probative of those elements. Moreover, the manuals prove knowledge—that Kennedy knew how to build an explosive or incendiary bomb rather than just create a smoke mix. This evidence is thus highly relevant to whether Kennedy did build a destructive device.

Second, the district judge noted that he was admitting the evidence "for the purpose of showing, among other things, criminal disposition or intent." R. 56 (Transcript at 5) (Page ID

14

#371).[7]  Kennedy asserts that what he intended to build—an explosive device or a smoke device— was not at issue in the case because the prosecution was completed under 26 U.S.C. § 5845(f)(1) only, not § 5845(f)(3).  Under § 5845(f)(1), only the objective nature of the device matters.  However, under § 5845(f)(3), the design of the device and how it is intended to be used matter.  Here, Kennedy's argument comes up short.  The prosecution presented evidence that Kennedy intended this device to be used as a destructive device or weapon—precisely the evidence Kennedy tried to exclude and challenges before this panel—and the district court instructed the jury on both 26 U.S.C. § 5845(f)(1) and (f)(3).  It is clear that Kennedy was prosecuted under both theories, and the evidence introduced was probative of the intended use of the device.

Finally, even if Kennedy were being prosecuted solely under 26 U.S.C. § 5845(f)(1) and even if we were to conclude as Kennedy argues that there is only a single disputed issue in the

---

[7]Although the district judge stated that he was admitting the evidence to show "criminal disposition," such an admission would be a direct violation of Federal Rule of Evidence 404(b). However, the nature of this physical evidence suggests that it was not "[e]vidence of a crime, wrong, or other act" used "to prove a [Kennedy's] character in order to show that on a particular occasion [Kennedy] acted in accordance with the character," Fed. R. Evid. 404(b), but rather evidence of Kennedy's ability to build a destructive device and intent to do so on this occasion. Moreover, the district judge in later overruling an objection by the defendant stated that he was doing so because the evidence was relevant to "the state of mind of the Defendant that might have led him to do the things he's accused of." R. 62 (Trial Tr. at 615–16) (Page ID ##981–82). Most importantly, the district judge provided a limiting instruction for the jury in his jury instructions, stating "you have heard testimony Defendant committed crimes, acts, wrongs, other than the ones charged in the indictment.  If you find the Defendant did those crimes, acts, wrongs, you can consider the evidence only as it relates to the Government's claim on the Defendant's opportunity, preparation, plan, knowledge and identity.  You must not consider it for any other purpose." R. 64 (Trial Tr. 839) (Page ID #1205).  Thus, we are convinced that the physical evidence was not admitted for an improper purpose.

case—whether the device was a destructive device—the evidence introduced actually went to the heart of that determination. What Kennedy sought to build is relevant to the device that was actually produced. Thus, if the jury concluded that Kennedy was attempting to make a destructive device—based on his writings and plans, components available where he resided and assembled the device, and other such evidence of his intent—then it becomes more likely that the device that was placed in the hardware store parking lot was objectively a destructive device. The evidence in his home was not merely evidence of other bad acts, such as placing the bomb at the high school, but probative evidence of the design and construction of the device placed outside the hardware store. For all these reasons, the evidence admitted was probative of a material issue in the case.

It was not an abuse of discretion for the district court to admit this evidence. First, the evidence carried quite a bit of probative value. Second, while the evidence suggested Kennedy's bad character and was prejudicial because it had a tendency to inflame the passions of the jurors, the argument in the case was not the type where passion can lead to a wrongful conviction. Kennedy was not disputing that he placed this device or did so with ill intent. Thus, the jury was not asked to conclude that Kennedy, because he had in the past committed bad acts, committed this particular bad act. Instead, Kennedy admitted committing this act, which was a bad act whether it was a smoke mix designed to scare or a destructive device. The propensity-based inference—Kennedy had built or attempted to build other dangerous devices, so he must have built this device—does little work in a case where the main argument concerned whether the

device Kennedy admitted building was a destructive device. The evidence was probative of the likelihood that Kennedy had built a destructive device.

Furthermore, the primary dispute between the parties pertained to the physical evidence at the scene and the testimony of expert witnesses rather than this evidence of Kennedy's dealings with chemicals, bomb parts, and bomb-making manuals. There was significant evidence that the device in the hardware-store parking lot actually exploded, including the excited utterance of a customer, Simcox's observations, the thermal damage on the ground, and the testimony of the expert witnesses, including one on behalf of Kennedy, who concluded that this was a destructive device.

Finally, and most importantly, the jury instructions included a limiting instruction that warned:

> you have heard testimony Defendant committed crimes, acts, wrongs, other than the ones charged in the indictment. If you find the Defendant did those crimes, acts, wrongs, you can consider the evidence only as it relates to the Government's claim on the Defendant's opportunity, preparation, plan, knowledge and identity. You must not consider it for any other purpose.

R. 64 (Trial Tr. 839) (Page ID #1205). Because we presume jurors follow limiting instructions, *see Richardson v. Marsh*, 481 U.S. 200, 206 (1987), there must have been little prejudicial effect from the submission of other-acts evidence in this case. Consequently, the district court did not abuse its discretion in admitting this evidence.

### B.  Jury Instructions

Kennedy argues that the jury instructions were flawed for two reasons.  First, Kennedy contends that the instruction on the third count under 18 U.S.C. § 921(a)(4) incorrectly stated the law by grouping "any explosive, incendiary, or poison gas, bomb, grenade, rocket having a propellant charge of more than four ounces; missile having an explosive or incendiary charge of more than one-quarter ounce; mine, or device similar to any of the devices described in the preceding clauses."  R. 39 (Jury Instructions at 29) (Page ID #216).  Instead, Kennedy believes that the correct instruction was the one given for count two under 26 U.S.C. § 5845(f), which separated "(1) any explosive, incendiary, or poison gas" from the "(A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device."  R. 39 (Jury Instructions at 22) (Page ID #209).  This version of the instructions, according to Kennedy, made clear that a "bomb" by itself is not a destructive device.  The bomb must be one of the three types listed in 26 U.S.C. § 5845(f)(1)—an explosive bomb, an incendiary bomb, or a poison gas bomb.  Similarly, an explosive or incendiary by itself is not a destructive device.  It must be, for example, an explosive bomb or an incendiary mine.  Moreover, while the count two instruction included that "[t]he term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon," R. 39 (Jury Instructions at 22) (Page ID #209), the instruction for count three omitted this portion of the instruction.  Finally, Kennedy argues that the instructions were also flawed because they failed to include an affirmative

18

defense instruction, which he requested. This proposed affirmative defense instruction alerted the jury that the government had to prove beyond a reasonable doubt that the device was designed as a weapon.

Any errors in the jury instructions for count three were harmless. *See Hedgpeth v. Pulido*, 555 U.S. 57, 60–61 (2008). Kennedy agrees that the instructions for count two were correct. Moreover, he argues that the instruction for count three should have been identical to the count two instructions. The jury's guilty verdict on count two means that they concluded beyond a reasonable doubt that Kennedy possessed an unregistered firearm (destructive device), 26 U.S.C. § 5861(d). Thus, they concluded that the device in the hardware store parking lot was a destructive device under a proper instruction. Had count three been phrased identically, there is no doubt that the jury would have concluded that Kennedy was a felon in possession of a firearm (destructive device), 18 U.S.C. § 922(g)(1), for the same device.

The omission of the affirmative defense does not compel reversal of Kennedy's convictions. The instruction for count two provided that "[t]he term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon." R. 39 (Jury Instructions at 22) (Page ID #209). This sentence provides the same content as the requested affirmative defense instruction which alerted the jury that the government had to prove beyond a reasonable doubt that the device was designed as a weapon. Thus, the affirmative defense instruction was substantially covered by the actual jury charge as to count two.[8] *See*

---

[8]While this sentence was left out of count three of the jury instructions, any error is harmless for the same reason as above—a guilty verdict on count two with proper instructions

*United States v. Sassak*, 881 F.2d 276, 279 (6th Cir. 1989) ("A trial court's refusal to give a requested jury instruction is reversible error only if the instruction is 1) correct, 2) not substantially covered by the actual jury charge, and 3) so important that failure to give it substantially impairs defendant's defense."). Consequently, we reject Kennedy's argument regarding the instructions provided to the jury.

## C. Sentencing

We review the procedural and substantive reasonableness of a sentence under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

> Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness.

*Id.*

---

proves that the jury with proper instructions on count three would have found the defendant guilty of that count as well, just as they did with the potentially flawed instructions.

### 1. Enhancement

Kennedy contends that the district court erred in assessing a four-level enhancement for possessing the destructive device "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). However, the district court did not err in its determination. The evidence showed that Kennedy was planning to rob a jewelry store next door to the hardware store. He had sketched the store's layout, planned an escape route map, and created a detailed to-do list. The destructive device would either distract the police or prevent pursuit. The district court's conclusion that the device near the hardware store was connected to this other felony—the robbery of the jewelry store—is certainly reasonable given the evidence presented. Thus, the district court did not clearly err that the destructive device was possessed in connection with another felony. *See United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011) (concluding that "we review the district court's factual findings for clear error, and accord 'due deference' to the district court's determination that the firearm was used or possessed 'in connection with' the other felony, thus warranting the application of the U.S.S.G. § 2K2.1(b)(6) enhancement").

### 2. Acceptance of Responsibility Reduction

Kennedy argues that the district court should have credited him with a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Kennedy contends that he accepted responsibility by pleading guilty to two of the charges, stipulating to elements of the remaining three charges, and admitting rather than contesting all but one of the remaining elements of the charges against him. Kennedy characterizes the one element he contested—

whether the device was a destructive device—as "a narrow technical determination." Appellant Br. at 46.

Kennedy's claim that he "went to trial on a technical question involving the proper statutory interpretation of the design of a device under 26 U.S.C. § 5845(f)(1)," *id.* at 47, is simply inaccurate.[9] Kennedy's defense at trial was that the device could have been a smoke mix rather than a destructive device and that it was not designed for use as a weapon. Whether the device was a smoke mix or an explosive bomb was a factual, rather than technical, determination. There was no question of statutory interpretation; if the device was a smoke mix, then it was not a destructive device, and if it was an explosive bomb, then it was a destructive device. Similarly, whether Kennedy designed the device for use as a weapon was a factual determination. Kennedy, as the admitted builder of the device, knew whether he built an explosive bomb or simply a smoke mix and whether it was designed for use as a weapon. His defense argued it was a smoke mix only. The jury, finding that the device was a destructive device, rejected Kennedy's argument that it was a smoke mix and not designed as a weapon. Thus, by making the claim that he built a smoke mix, Kennedy failed to accept responsibility for building a destructive device as the jury determined. Consequently, the district court's decision

---

[9]The judge charged the jury on not only 26 U.S.C. § 5845(f)(1), but also § 5845(f)(3). Under this latter section, how the device was designed and its intended use matter in determining whether the device is indeed a destructive device. Consequently, the factual question whether Kennedy designed the device and intended that it be a destructive weapon was at issue. Kennedy failed to accept responsibility for designing the device as an explosive, and thus destructive, device.

that Kennedy did not accept responsibility was not clearly erroneous.  *See United States v. Fleener*, 900 F.2d 914, 917 (6th Cir. 1990).

### 3. Double Counting/Variance

During sentencing, Kennedy pointed out that a prior conviction doubly penalized him because it led to a six-level increase in his base offense level and impacted his criminal history level as well.  Due to this double counting, Kennedy requested that the district court consider a lower guidelines range for sentencing.  The district court rejected the request without any explanation.  Kennedy argues that the district court failed to explain adequately its rejection of a request for a variance on this basis.[10]  Kennedy cites *United States v. Robertson*, 309 F. App'x 918 (6th Cir. 2009), for the proposition that the district judge was required to address the nonfrivolous, complex argument.  *Id.* at 923–24.

While Kennedy's counsel did not explicitly state during the sentencing proceeding that she was requesting a variance, she stated that "my argument [is] . . . that the guidelines, as calculated by probation, overstate the severity and the nature of Mr. Kennedy's criminal history, and that's the reason that I also ask the Court to consider the guideline range of 46 to 57 months."  R. 68 (Sentencing Tr. at 16) (Page ID #1244).  Such a statement is a request for a downward variance.  *Cf. Robertson*, 309 F. App'x at 922–23 ("Although Robertson used the

---

[10]Kennedy also states that the court failed to understand that he was asking for a variance because of the double effect his prior criminal conviction had on his base offense level and criminal history.  However, while the district judge originally misunderstood the argument as an objection, the district judge acknowledged this failure and asked defense counsel to state the argument in full.  The restatement clarified defense counsel's request.  Nothing suggests that the district court, after getting clarification from defense counsel, misunderstood the request that Kennedy made.

word 'departure,' it is clear from the context of the sentencing memorandum and Robertson's counsel's clarification and argument before the district court at the sentencing hearing that what Robertson was really requesting was a downward variance based on the § 3553(a) factors because of the double-counting issue."). "An argument that a district court should award a variance based on the § 3553(a) factors because the guideline range double-counted prior offenses is a nonfrivolous argument." *Id.* at 923. The district court should have addressed the nonfrivolous argument and explained why it was rejecting that argument. *United States v. Peters*, 512 F.3d 787, 789 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 357 (2007)).

A review of the sentencing transcript reveals no discussion by the district court of Kennedy's argument that the sentencing guidelines were unduly harsh due to double counting. The district court has failed to address the nonfrivolous argument and to explain the reason for rejecting it. Because of this failure, we must vacate the sentence and remand for consideration of a downward variance in light of the potential double counting.

## 4. Fine

"The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). Kennedy claims that the sentencing court should not have imposed a $20,000 fine because Kennedy has no ability to pay the fine.

The guidelines, however, place the burden on the defendant to prove that he is unable to pay the fine and not likely to become able to pay it. *Id.*; *see also United States v. Hickey*, 917 F.2d 901, 907 (6th Cir. 1990). Kennedy did not carry this burden. All Kennedy offered to prove that he was unable to pay the fine was his counsel's statements to that effect. On the other hand, Kennedy stated in recorded phone calls that he had inherited valuable jewels from his mother. Consequently, the district court did not abuse its discretion in imposing the fine.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the convictions, but VACATE the sentence and REMAND for consideration of Kennedy's argument for a downward variance.