NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Case No. 17-6097

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jun 01, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DEMETRICE BRANDON, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; CLAY and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. When the police searched Demetrice Brandon's house, they found 11.9 grams of MDMA, drug paraphernalia, and two loaded guns. Thereafter, the federal government charged Brandon with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Brandon pled guilty, and the district court sentenced him to 77 months in prison. He now appeals his sentence.

*Fortress theory.* Brandon first argues that the district court should not have increased his offense level for possessing a firearm or ammunition "in connection with another felony offense"—here, drug trafficking—when calculating his Guidelines range. U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B). On appeal, we review the district court's factual findings underlying this enhancement for clear error and afford "due deference" to its determination that

the firearm was used in connection with a felony offense. *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011).

The district court applied the "fortress theory" to enhance Brandon's sentence. Under this theory, a firearm and a drug offense are "connected" for purposes of the enhancement if it reasonably appears that a firearm found in the defendant's house was "used to protect . . . drugs or otherwise facilitate a drug transaction." *Id.* (quoting *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009)). The district court need not find that the defendant actively used the firearm in facilitating a drug transaction for the fortress theory to apply—it is enough if the presence of firearms had an "emboldening role" in the defendant's illegal activities. *Id.* (quoting *Angel*, 576 F.3d at 321). Courts consider the totality of the circumstances in determining whether a firearm had such a role, including (a) the proximity of the firearm to the drugs, (b) the amount of drugs in the defendant's possession, (c) whether the defendant also had large amounts of cash in close proximity, (d) the type of firearm at issue, (e) whether the firearm was loaded, and (f) whether the defendant had a non-drug-related explanation for possessing the firearm. *Id.* at 432–33; *see* U.S.S.G. § 2K2.1 cmt. n.14(b) (noting that when the other felony offense is drug trafficking, evidence that the firearm was in "close proximity to drugs, drug-manufacturing materials, or drug paraphernalia" is enough).

Brandon first argues that the district court erred because the facts did not justify application of the fortress theory. Those undisputed facts are as follows. A confidential informant made three controlled purchases of MDMA from Brandon. Each time, police used audio surveillance to monitor the transaction and followed Brandon as he left his home, made the transaction, and then returned home. A few days after the final controlled purchase, officers searched Brandon's home. They found Brandon's stash of MDMA in the living room and a loaded pistol about ten feet away

in the kitchen. They also found a pink mineral rock in the kitchen and digital scales and baggies throughout the rest of the house. As officers searched the house, Brandon admitted that he sold MDMA and that he used the mineral rock in his kitchen to "cut" the drugs.

These facts supported application of the fortress theory. This case is similar to *Taylor*, which applied the fortress theory where officers found a loaded gun in the defendant's bedroom, drugs in his kitchen, and a digital scale and packaging paraphernalia throughout the house. *See* 648 F.3d at 432. As Brandon points out, the defendant in *Taylor* actually sold drugs from his home and had $400 cash, while Brandon sold MDMA outside his home and did not have a significant amount of cash. But these distinctions do not change the outcome here. The fortress theory applies if the firearms found on the premises "are to be used *to protect the drugs* or otherwise facilitate a drug transaction." *Id.* (emphasis added) (quoting *Angel*, 576 F.3d at 321). Considering Brandon was an admitted drug dealer who had a stash of MDMA in his house at the time of the search, it was reasonable for the district court to infer that he "was emboldened in his trafficking by having the firearm in the house" and that he "obtained the gun to protect himself and his possessions." *Id.* at 433; *see also United States v. Ennenga*, 263 F.3d 499, 504 (6th Cir. 2001) ("When one is in possession of a large and valuable stash of drugs, the desire to protect these illicit substances can be compelling."). Thus, the fact that Brandon did not sell drugs from his home is immaterial. Similarly, that the defendant in *Taylor* had cash does not tip the scales, especially where, as here, Brandon admitted that he was a drug dealer who cut the drugs at his home.

Brandon next argues that the district court applied the fortress theory without first making the necessary factual findings. The problem for Brandon is that, as the district court correctly noted, there was no "factual dispute" as to the narrative set out in Brandon's presentence report— *i.e.*, the discovery of the firearms, their location, or their proximity to the drugs. And when facts

in the presentence report are undisputed, the district court can rely on them for purposes of sentencing. *See* Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact."); *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007). Brandon's argument on this front thus fails.

*Failure to explain.* Next, Brandon contends that the district court did not adequately explain its rejection of his request for a downward variance or the reasons for his sentence. *See* 18 U.S.C. § 3553(c); *Gall v. United States*, 552 U.S. 38, 50 (2007). Because he raised neither objection before the district court, we review for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). "Only in exceptional circumstances will we find such error." *Id.* (citation and quotation marks omitted). To prevail, Brandon must show that the district court made an "obvious or clear" error that affected both his substantial rights and the "fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citation omitted).

This case is very similar to *Vonner*. In both cases, the district court said little in rejecting the defendant's request for a below-Guidelines sentence and sentenced the defendant within the Guidelines. *See id.* Like Vonner, Brandon argues that the district court inadequately explained both its reasons for rejecting his request for a downward variance and its reasons for the sentence imposed. And here, as there, plain-error review applies. The *Vonner* court recognized that while a sentencing judge must give "the reasons" for its sentence, district judges need not provide reasons for rejecting "any and all arguments by the parties," nor a "lengthy explanation" of the court's analysis of the sentencing factors set out in § 3553(a). *Id.* at 387 (quoting *Rita v. United States*, 551 U.S. 338, 356–57 (2007)); *see* 18 U.S.C. § 3553(c). Instead, it held that where a court imposes a within-Guidelines sentence, it is enough if the "record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's

circumstances and took them into account in sentencing him." *Vonner*, 516 F.3d at 387 (internal quotation marks omitted) (quoting *Rita*, 551 U.S. at 358). The court ultimately determined that although the "trial court would [have] do[ne] well to say more," it had not plainly erred. *Id*. at 386, 388–89.

The same is true here. Although the district court's response to Brandon's request for a downward variance was brief, the record shows that the court heard arguments from both sides and took those arguments into account in reaching its ruling.[1] *See* R. 36, Pg. ID 446 ("The Court having heard the arguments of counsel on the defendant's motion for a variance based upon the argument that his criminal history is overstated . . . disagrees with the argument and the Court will deny that request."). And in explaining its decision to give Brandon a bottom-of-the-Guidelines sentence, the court mentioned the § 3553(a) factors relevant to Brandon's requests for leniency. *Compare* R. 36, Pg. ID 448 ("The Court having considered the nature and circumstances of the offense, the defendant's background and history, the advisory guideline range, as well as the other factors listed in Section 3553(a) . . . commit[s the defendant] to the custody of the Bureau of Prisons to be imprisoned for a term of 77 months."), *with Vonner*, 516 F.3d at 384 (affirming where district court said only that it had considered "the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory Guidelines range, as well as the other factors listed in 18 [U.S.C. § ] 3553(a)" (alteration in original)). In context, these statements were sufficient to show that the district court listened to Brandon's arguments, considered the evidence, and sentenced Brandon accordingly. *See Vonner*, 516 F.3d at 387. Here, as in *Vonner*, "there is a sizeable gap between good sentencing practices and reversibly bad sentencing practices." *Id*. at

---

[1] Of course, the district court did not consider the arguments Brandon raises for the first time on appeal—his age and his reduced risk of recidivism due to his age. In any event, he fails to explain why it was plain error for the district court not to grant a variance based on something he never raised. *See Vonner*, 516 F.3d at 392.

389. The district court certainly could have provided more explanation. Nevertheless, under *Vonner*, there is no plain error.

Brandon counters that, even in light of *Vonner*, more explanation was required. He relies on *United States v. Gapinski*, which—quoting a pre-*Vonner* case—said that a sentencing judge must "explain[] the basis for rejecting" a non-frivolous argument for leniency. 561 F.3d 467, 474 (6th Cir. 2009) (quoting *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007)). But, for two reasons, *Gapinski* cannot mean what Brandon suggests: that a sentencing court *must* explain in detail its reasons for rejecting *every* argument for leniency. First, Brandon's reading cannot be reconciled with what *Gapinski* actually held. Just two paragraphs after *Gapinski* set out the above-quoted language, it held that the sentencing court had "adequately considered and rejected" Gapinski's argument that his criminal history was overstated—*even though* the district court "did not refer expressly to Gapinski's arguments on this point." *Id*. And second, to the extent that *Gapinski* appears to heighten the explanation requirements set out by the en banc court in *Vonner*, it cannot do so. *See Vonner*, 516 F.3d at 387 (noting that sentencing courts are not required to "give the reasons for rejecting any and all arguments by the parties for alternative sentences"); *see also Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Accordingly, *Gapinski* is better read as merely applying the rule set out in *Vonner*: that the record must make clear that the sentencing judge listened to each argument, considered the supporting evidence, and took them into account in determining the defendant's sentence.

Brandon also cites to several other post-*Vonner* cases, none of which changes the outcome here. In each, the record was devoid of any indication that the district court had even *considered* the defendant's variance motion. *See United States v. Wallace*, 597 F.3d 794, 804 (6th Cir. 2010) (reversing where district court failed to make even a "cursory mention" of the defendant's main

argument for leniency); *see also United States v. Powell*, 679 F. App'x 460, 462 (6th Cir. 2017) (reasoning that the sentencing judge "did not acknowledge" defendant's argument that his criminal history was overstated); *United States v. Kennedy*, 578 F. App'x 582, 595 (6th Cir. 2014) (noting that there was "no discussion by the district court of Kennedy's argument that the sentencing guidelines were unduly harsh due to double counting"); *United States v. Robertson*, 309 F. App'x 918, 924–25 (6th Cir. 2009) ("Nowhere in the sentencing hearing transcript is it evident that the district judge understood, let alone considered, Robertson's double-counting argument."). Accordingly, in these cases the sentencing judges failed to clear even *Vonner*'s low bar. But *Vonner* calls for a case-specific examination of the record, and the circumstances here are simply different. The record in this case shows that the district court listened to Brandon's arguments, considered the supporting evidence, and sentenced Brandon accordingly.

We **AFFIRM** Brandon's sentence.