**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0176n.06

No. 15-1456

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 22, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| JOHN ROBERT KENNEDY, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: MOORE, McKEAGUE, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** After a successful challenge to his initial sentence, John Robert Kennedy brings this second appeal challenging his sentence for manufacturing and possessing a destructive device. In our initial remand, we instructed the district court to consider Kennedy's argument for a downward variance. Because nearly two years had passed since his original sentencing, Kennedy on remand raised additional arguments regarding his postsentence rehabilitation efforts. The district court, without reference to these rehabilitation efforts, imposed the same 108-month sentence. Kennedy now argues that his sentence is procedurally and substantively unreasonable, and requests that we again vacate his sentence and remand for resentencing. We **VACATE** the sentence and **REMAND** for resentencing in light of this opinion.

## I. BACKGROUND

In 2011, an employee of a hardware store in Trenton, Michigan observed a large cloud of smoke in the store's parking lot after a customer reported hearing an explosion. Although no one was physically harmed, police launched an investigation into the explosive device, and uncovered an array of evidence linking Kennedy to that device, as well as another non-explosive device discovered at a nearby high school.

A grand jury indicted Kennedy on six counts charging manufacture and placement of an explosive device. *United States v. Kennedy*, 578 F. App'x 582, 584 (6th Cir. 2014). He pleaded guilty to two of those charges, and was later convicted of three additional charges. *Id.* The Presentence Report ("PSR") calculated Kennedy's guidelines range under the U.S. Sentencing Guidelines to be 87 to 108 months of imprisonment. PSR at ¶ 81. This was based on a base offense level of twenty-two under USSG § 2K2.1(a)(3), a two-level increase for a destructive device under USSG § 2K2.1(b)(3), and a four-level firearm enhancement under USSG § 2K2.1(b)(6)(B). *Id.* at ¶¶ 29–31.

At his first sentencing hearing, Kennedy argued that his prior convictions doubly penalized him by increasing his base offense and criminal history levels, and he asked the district court to consider a lower guidelines range. R. 68 (Sentencing H'rg Tr. at 16) (Page ID #1244). The district court rejected Kennedy's request without explanation, and sentenced Kennedy to 108 months of imprisonment. *Id.* at 27–28 (Page ID #1255–56). On appeal, we found that the district court had failed to address Kennedy's nonfrivolous argument and explain the basis for rejecting it. *Kennedy*, 578 F. App'x at 595. We therefore vacated Kennedy's sentence and

remanded to the district court "for consideration of a downward variance in light of the potential double counting." *Id.*

On remand, Kennedy again requested a downward variance based on double counting. R. 83 (Resentencing Mem. at 2) (Page ID #1353). Although he admitted that the guidelines permit double counting, he argued that "doing so in a case like this creates an unduly harsh outcome," *id.*, because the destructive device at issue was not particularly dangerous and did not harm anyone, *id.* at 3 (Page ID #1354).

Because nearly two years had passed since his first sentencing, Kennedy, citing *Pepper v. United States*, 562 U.S. 476 (2011), also presented a new argument for a downward variance based on his postsentencing rehabilitation efforts in prison. R. 83 (Resentencing Mem. at 5–6) (Page ID #1356–57). In support of his argument, Kennedy pointed to his enrollment in the Inmate Financial Responsibility Program and his participation in numerous inmate jobs that have enabled him to pay his financial penalties and learn trade skills. *Id.* at 6–7 (Page ID #1357–58). He also pointed out that he had no disciplinary record, and that he had managed to maintain strong relationships with his family while incarcerated. *Id.* at 6–8 (Page ID #1357–59).

Kennedy also enrolled in a Rational Thinking Course, an adult continuing education program called "Self-Awareness, Character, Opportunity, Reliability and Extraordinary Effort" ("SCORE"), and other courses in computer training, health and wellness, and weight management wellness. *Id.* at 7 (Page ID #1358). At the resentencing hearing, his attorney argued that "[i]t's something that we don't always see with defendants, but Mr. Kennedy I think really has made a sincere effort to get at some of the underlying psychological issues that may

have led him to this place today, and . . . the [c]ourt ought to consider that in fashioning a sentence that is sufficient but not greater than necessary to punish him for these crimes." R. 89 (Resentencing H'rg Tr. at 7) (Page ID #1406).

At the conclusion of the resentencing hearing, Kennedy testified about his changed attitude since his initial sentencing. *Id.* at 15–16 (Page ID #1414–15) ("I've made mistakes, your Honor, serious mistakes, but I have learned from them and become a better person for it . . . the prison has given me some tools that I desperately needed. I now can think through the difficult decisions instead of brash decisions which led me to have these negative consequences."). In response, the prosecution argued that the court should not consider Kennedy's postsentencing rehabilitation efforts because they were not truly voluntary, and that he was required to undertake such efforts because he was incarcerated. *Id.* at 12 (Page ID #1411).

On April 14, 2015, the district court imposed the same 108-month sentence on Kennedy, holding that double counting in this case was "not unduly harsh," particularly given the "very high degree of risk to the public welfare." R. 84 (Resentencing Order at 2) (Page ID #1384). The district court did not address Kennedy's rehabilitation argument. Kennedy filed a timely notice of appeal on April 21, 2015.

During the pendency of this appeal, we held in *United States v. Pawlak*, 822 F.3d 902, 907 (6th Cir. 2016), that the residual clause of the career offender sentencing guideline, USSG § 4B1.2(a), was unconstitutionally vague. Kennedy subsequently filed a supplemental brief requesting a reduced guidelines range in light of our holding in *Pawlak* and the Supreme Court's

holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson* 2015"). The government has filed a response.

## II. ANALYSIS

### A. Standard of Review

On appeal, Kennedy argues that his sentence is procedurally and substantively unreasonable. We apply an abuse-of-discretion standard in reviewing a sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). We must first assess the sentence for procedural error, which could include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* If we find that the sentencing decision was "procedurally sound," we review its substantive reasonableness under an abuse-of-discretion standard. We may apply a presumption of substantive reasonableness to sentences that are within the Guidelines range. *Id.*; *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). If the district court's sentence is procedurally unreasonable, however, we need not reach the question of substantive reasonableness. *See United States v. Wilson*, 614 F.3d 219, 226 (6th Cir. 2010).

### B. Procedural Reasonableness

#### 1. Postsentencing Rehabilitation

Kennedy argues that his sentence is procedurally unreasonable because the district court failed to consider his request for a downward variance based upon his rehabilitation efforts after his initial sentencing.

As we made clear in Kennedy's initial appeal, when a defendant raises specific nonfrivolous arguments for a downward variance, the district court must address those arguments and explain its reason for rejecting such arguments. *Kennedy*, 578 F. App'x at 595; *see United States v. Peters*, 512 F.3d 787, 789 (6th Cir. 2008) ("When the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, . . . a sentencing judge should address the parties' arguments and explain why he has rejected those arguments.") (internal quotation marks omitted). Kennedy's request for a downward variance based upon his rehabilitation efforts was clearly nonfrivolous. In *Pepper v. United States*, 562 U.S. 476, 481 (2011), the Supreme Court held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." This rule is consistent with the longstanding principle that sentencing judges are granted broad discretion to consider information from a vast array of sources, to ensure "that the punishment will suit not merely the offense but the individual defendant." *Wasman v. United States*, 468 U.S. 559, 563–64 (1984).

The key inquiry, therefore, is whether the district court gave this new argument adequate consideration at resentencing. Although a district judge need not compose "a full opinion in every case," it is important to provide a statement of reasons sufficient "to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Where a defendant's nonfrivolous argument advocates for a downward variance from the Guidelines, "the

6

judge will normally go further and explain why he has rejected those arguments." *Id.* at 357. Overall, the record should reflect "that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Vonner*, 516 F.3d at 387 (internal quotation marks omitted).

The district court's order did not mention Kennedy's rehabilitation argument, let alone discuss or consider its merits. *See generally* R. 84 (Resentencing Order) (Page ID #1383–85). Instead, the order focuses exclusively on the question of double counting, an issue that the district court had failed to consider during the initial sentencing. *Id.* This is so despite the fact that, as discussed above, the parties each discussed Kennedy's argument regarding postsentencing rehabilitative efforts at some length during the resentencing hearing, and Kennedy attached several documents evidencing his rehabilitative efforts to his sentencing memorandum to the district court. *See* R. 89 (Resentencing H'rg Tr. at 12–15) (Page ID #1411–14); R. 83 (Def. Resentencing Mem. at 6–8) (Page ID #1357–59); R. 83-2 (Certificate) (Page ID #1363); R. 83-5 (Family Letter) (Page ID #1370–71).

The resentencing hearing transcript similarly does not contain any considered discussion of Kennedy's argument. In fact, the only statements on the record that can be construed as referring in any way to Kennedy's postsentencing rehabilitation arguments were made at the conclusion of the resentencing hearing. The court stated:

> Okay, Mr. Kennedy . . . Your case is well made. I don't mean to suggest that I
> have come to any conclusion with regard to what this Court should do with the
> case under advisement. You take care of yourself though. You're apparently

7

> doing some things that are in the right direction. Keep on going. Stay healthy. We'll get a decision within a week or so.

R. 89 (Resentencing H'rg Tr. at 17) (Page ID #1416).

While these statements of encouragement acknowledge Kennedy's rehabilitative efforts, they do not suggest that the district court took Kennedy's rehabilitative evidence "into account in sentencing him." *Vonner*, 516 F.3d at 387 (internal quotation marks omitted). They fail to demonstrate that the district court understood Kennedy's request for a downward variance on the basis of these rehabilitative efforts or that the district court considered and rejected Kennedy's argument on the merits. Indeed, we are left to guess whether the district court ignored this evidence, refused to consider it, or rejected it on the merits.

The dissent argues that the district court was not required to entertain defendant's postsentencing rehabilitation efforts because our remand was limited to the issue of double counting. However, our language remanding this case in *Kennedy* did not limit the remand to a single sentencing issue. "In the absence of an explicit limitation, the remand order is presumptively a general one." *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997). We have explained that "[t]he presumption in favor of a general remand is necessarily strong in the context of a resentencing because the calculation of a sentence under the Guidelines requires a balancing of many related variables, and [t]hese variables do not always become fixed independently of one another." *United States v. McFalls*, 675 F.3d 599, 605 (6th Cir. 2012) (internal quotation marks omitted); *see Pepper*, 562 U.S. at 507 (recognizing that a district court's "original sentencing intent may be undermined by altering one portion of the calculus" upon resentencing) (citation omitted). For this reason, when remanding for resentencing, "this

court should leave no doubt in the district judge's or parties' minds as to the scope of the remand." *United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999). Rather, "[t]he language used to limit the remand should be, in effect, unmistakable." *Id.*

Our language in *Kennedy* did not "unmistakabl[y]" limit the scope of the district court's resentencing. *Id.* The language that we used in remanding this case is substantially similar to language used in *McFalls*. The first *McFalls* panel "found merit in McFalls's argument" that his two prior convictions were not crimes of violence, and the panel accordingly remanded for resentencing with the following language: "For these reasons, McFalls' case is remanded to the district court for resentencing, following further review of any sources permitted under *Shepard v. United States*, 544 U.S. 13 (2005), to determine whether McFalls' prior convictions were for crimes of violence under the Guidelines." *McFalls*, 675 F.3d at 602 (quoting *United States v. McFalls*, 592 F.3d 707, 717 (6th Cir. 2010)). McFalls argued that, because this "explicitly outlin[ed] the sole issue to be addressed by the district court at resentencing" and "creat[ed] a narrow framework within which the district court had to operate"—examining the *Shepard* documents and determining whether McFalls's convictions were for crimes of violence—the remand was limited, and the district court could not engage in de novo resentencing. *Id.* at 604. We disagreed, holding that "[t]he presumption of general remand" was not overcome because our remand did not "limit[] the district court's inquiry . . . in unmistakable terms," and it did not "articulate[] the chain of intended events with particularity" so that "no doubt" remained as to the intended scope of remand. *Id.* at 605–06 (internal quotation marks omitted). Although we recognized that "[i]t could be argued that [the prior *McFalls*] opinion created a 'framework' . . .

because it directed the district court to review sources permitted under *Shepard*," we held that this "framework was not so narrow in scope as to preclude the district court from considering other issues," and it "did not convey clearly the intent to limit the scope of the district court's review." *Id.* at 604–05.

The same is true here. In "remand[ing] for consideration of a downward variance in light of the potential double counting," *United States v. Kennedy*, 578 F. App'x at 595, our prior opinion did not "convey clearly the intent to limit the scope of the district court's review" to only Kennedy's double-counting argument—as opposed to the numerous other sentencing variables that are implicated upon remand—nor did our language "sufficiently outline the procedure the district court [was] to follow" on remand or set out "[t]he chain of intended events . . . with particularity," *Campbell*, 168 F.3d at 267–68. This is in sharp contrast to *Campbell*, where a limited remand was clearly articulated when the initial panel instructed:

> the case is remanded to the district court for an evidentiary hearing where Campbell is represented by counsel. The district court's inquiry should relate to the forfeiture of the real estate and the validity of the district court's determination of Campbell's financial ability at the original sentencing hearing. It is within the province of the district court . . . to permanently correct Campbell's records so that any fine imposed upon Campbell does not become so onerous as to result in Campbell's permanent incarceration in virtual debtor's prison.

168 F.3d at 268 (quoting *United States v. Campbell*, No. 95-5856, 1995 WL 758468, at *1 (6th Cir. Dec. 21, 1995)). Unlike *Campbell*, the language of our original remand in Kennedy's case, like the language in *McFalls*, lacks the particularity and unambiguous terms required to overcome the presumption of a general remand.

It is clear that our remand in *Kennedy* was not sufficiently explicit so as to "leave no doubt in the district judge's or parties' minds as to the scope of the remand." *Id.* at 268. Both Kennedy's and the government's arguments to the district court on remand demonstrate that neither party considered our remand to be limited. In Kennedy's resentencing memorandum before the district court, Kennedy asked for a downward variance because of his postsentencing conduct and cited *Pepper*. R. 83 (Def. Resentencing Mem. at 6) (Page ID #1357). Kennedy attached and discussed numerous documents evidencing his rehabilitative efforts following his first sentencing. *See, e.g.*, *id.* at 6–8 (Page ID #1357–59); R. 83-2 (Certificate) (Page ID #1363); R. 83-5 (Family Letter) (Page ID #1370–71). The government did not argue to the district court that this was beyond the scope of our remand or irrelevant at resentencing; rather, during the resentencing hearing, the government responded to the merits of Kennedy's postsentencing-rehabilitation argument. R. 89 (Resentencing H'rg at 12) (Page ID #1411). The government asserted that Kennedy "ha[d] to be enrolled in" particular programs while incarcerated, and thus the government requested that the district court not "give[] any credence" to Kennedy's completion of these programs "as far as granting a variance in this case." *Id.* Kennedy and his lawyer continued to bring up his postsentencing rehabilitation at several additional points during the resentencing hearing. *Id.* at 14–15 (Page ID #1413–14). At no point did either side, or the district court, suggest during Kennedy's resentencing that the remand was limited and that the evidence that Kennedy presented was outside of the scope of the remand. It is only now on appeal that the government suggests that our remand was limited. Appellee's Br. at 6.

11

Finally, our rejection of Kennedy's three other claims on appeal did not preclude the district court from considering any other factors at resentencing. *See Kennedy*, 578 F. App'x at 594–96 (rejecting Kennedy's arguments that the district court erred in assessing a four-level enhancement under USSG § 2K2.1, failing to credit him a two-point reduction for acceptance of responsibility, and imposing a $20,000 fine). Unlike in *Moore*, where we held that our remand was limited where we explicitly "adhere[d] to our previous opinion in all other respects," 131 F.3d at 597 (quoting *United States v. Moore*, 76 F.3d 111, 114 (6th Cir. 1996)), nothing in *Kennedy* indicates that the district court could not revisit sentencing factors not addressed in our opinion. "Because a district court's original sentencing intent may be undermined by altering one portion of the calculus, an appellate court when reversing one part of a defendant's sentence may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan." *Pepper*, 562 U.S. at 507 (internal quotation marks omitted). Here, although we identified Kennedy's argument for a downward variance as one factor that required consideration, we vacated Kennedy's entire sentence, leaving the district court free to weigh each factor differently on remand. This approach is particularly appropriate where a defendant requests consideration of evidence of postsentencing rehabilitation, which, by its very nature, was not available at the original sentencing, and thus was never considered nor rejected on appeal. Our rejection of Kennedy's three other claims is not relevant to that calculus.

Absent any indication on the record of how, and whether, the district court evaluated Kennedy's evidence of postsentencing rehabiliation, we are deprived of our ability to review meaningfully Kennedy's sentence on appeal. *See Gall*, 552 U.S. at 50. We must therefore

vacate the sentence once again and remand for consideration of Kennedy's arguments for a downward variance in light of Kennedy's rehabilitative efforts after his original sentencing.

### 2. "Crime of Violence" Enhancement

In his PSR, Kennedy was assigned a base offense level of twenty-two under USSG § 2K2.1, PSR at ¶ 29, because his offense involved a "firearm that is described in 26 U.S.C. § 5845(a)" and he committed this offense "subsequent to sustaining one felony conviction of . . . a crime of violence," USSG § 2K2.1(a)(3). In a supplemental brief filed on July 29, 2016, Kennedy argues that his base offense level calculation can no longer stand. He argues that after the Supreme Court's decision in *Johnson* 2015, which invalidated the residual clause of the Armed Career Criminal Act ("ACCA"), and our opinion in *Pawlak*, which invalidated the identical residual clause contained in § 4B1.2(a) of the Sentencing Guidelines, his prior conviction in 2001 for being a felon in possession of explosives no longer counts as a "crime of violence" under § 4B1.2(a). Since supplemental briefs were filed, however, the Supreme Court held "that the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and that § 4B1.2(a)'s residual clause is not void for vagueness," abrogating our holding in *Pawlak*. *Beckles v. United States*, 580 U.S. ---, --- 2017 WL 855781, at *9 (Mar. 6, 2017). In any event, Kennedy's claim fails, because his prior conviction qualifies as a "crime of violence" under the enumerated clause of § 4B1.2.

Although Kennedy identifies his 2001 conviction for being a felon in possession of explosives as the predicate offense used to calculate his base offense level, Kennedy's PSR clearly notes two counts of conviction from 2001, which are unlawful possession of a machine

13

gun and being a felon in possession of explosives. PSR at ¶ 43. Kennedy was sentenced to 71 months in custody on both counts to run concurrently. *Id.* The PSR does not specify which of Kennedy's 2001 convictions was considered a predicate offense for the purposes of calculating his base offense level under § 2K2.1. *Id.* We consider both convictions in assessing Kennedy's claim that his base offense level of twenty-two can no longer stand.

Under USSG § 2K2.1(a)(3),[1] a higher base offense level is applied to offenders who have committed a weapons offense "subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The commentary to § 2K2.1(a)(3) states that the term "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." USSG § 2K2.1 cmt. n.1. At the time of Kennedy's original sentencing, the term "crime of violence" was defined in § 4B1.2(a) of the Guidelines as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a). As is relevant here, Application Note 1 of the commentary to § 4B1.2 also stated that "[u]nlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a 'crime of violence.'" USSG § 4B1.2 cmt. n.1. Kennedy's prior conviction for unlawful possession of a machine gun

---

[1]At the time of Kennedy's original sentencing, his PSR based all determinations on the 2012 Guidelines Manual. PSR at ¶ 27. Because a court at resentencing will "apply the Guidelines that were in effect at the time of the defendant's original sentencing," we consider the 2012 Guidelines Manual in assessing Kennedy's supplemental claim. *United States v. Taylor*, 648 F.3d 417, 424 (6th Cir. 2011).

therefore qualified as a "crime of violence" pursuant to the commentary to § 4B1.2 at the time of his original sentencing. We do not find similar language in the commentary that clearly[2] lists the offense of being a felon in possession of explosives as a "crime of violence."

On November 1, 2016, an amendment to § 4B1.2 went into effect, which removed the residual clause and moved offenses previously enumerated in the commentary to the guideline itself. U.S. Sentencing Guidelines Manual supp. to app. C, amend. 798 at 128–29. As amended, the enumerated clause of § 4B1.2 now defines "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

USSG § 4B1.2(a)(2) (2016); *see* U.S. Sentencing Guidelines Manual supp. to app. C, amend. 798 at 125.

As explained above, the Guidelines instruct courts to apply the version of the Guidelines in effect at the time of the defendant's original sentencing. USSG § 1B1.11. Although a court

---

[2]In his supplemental brief, Kennedy appears to suggest that his conviction for being a felon in possession of explosives qualified as a crime of violence under the commentary to § 4B1.2. *See* Appellant's Suppl. Br. at 10. We do not find support for this claim. A paragraph in the commentary states that "'[c]rime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)." USSG § 4B1.2 cmt. n.1. Kennedy's conviction, however, was for being a felon in possession of explosives previously shipped in interstate commerce, in violation of 18 U.S.C. §§ 842(i)(1) and 844(a). *United States v. Kennedy*, 52 F. App'x 315, 315 (8th Cir. 2002). Even if Kennedy's contention is that the explosive in question was a "destructive device" described in 26 U.S.C. § 5845, *see* Appellant's Suppl. Br. at 10, we need not decide whether this offense qualifies as a "crime of violence" under the commentary or the residual clause of § 4B1.2. We find it sufficient that his conviction for unlawful possession of a machine gun clearly qualified under the commentary to § 4B1.2 at the time of his original sentencing.

must apply that version in its entirety, "if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments to the extent that such amendments are clarifying rather than substantive changes." *Id.* "An amendment is clarifying if it changes nothing concerning the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant." *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007) (internal quotation marks omitted). We consider three factors when determining whether an amendment clarifies or substantively alters a Guidelines provision: "(1) how the Sentencing Commission characterized the amendment; (2) whether the amendment changes the language of the guideline itself or changes only the commentary for the guideline; and (3) whether the amendment resolves an ambiguity in the original wording of the guideline." *United States v. Monus*, 356 F.3d 714, 718 (6th Cir. 2004) (internal quotation marks omitted).

All three factors favor a construction of Amendment 798 as a clarifying amendment. When the Sentencing Commission amended § 4B1.2, it noted that it "received extensive comment . . . expressing a view that the definition of 'crime of violence' is complex and unclear." U.S. Sentencing Guidelines Manual supp. to app. C, amend. 798 at 127. With respect to crimes previously enumerated in the commentary, the Sentencing Commission stated that "[*f*]*or easier application*, all enumerated offenses are now included in the guideline at § 4B1.2," and noted that "prior to the amendment, the list was set forth in both § 4B1.2(a)(2) and the commentary at Application Note 1." *Id.* at 129 (emphasis added). With respect to the addition of offenses that involve the "use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or an explosive material as defined in 18 U.S.C. 841(c)," the Sentencing Commission

16

states that "[t]his addition is consistent with long-standing commentary in § 4B1.2 categorically identifying possession of a firearm described in 26 U.S.C. §5845(a) as a 'crime of violence,' and therefore *maintains the status quo*." *Id.* at 130 (emphasis added). This demonstrates that the Sentencing Commission was merely seeking to simplify and clarify the language of § 4B1.2 with respect to enumerated offenses. Although the amendment changed the language of both the guideline and the commentary, the change was merely to consolidate the two, not to make substantive revisions to either. Therefore, we hold that this amendment is clarifying, and "may be applied retroactively to discern the Sentencing Commission's intent regarding the application of a pre-amendment guideline." *Geerken*, 506 F.3d at 465. Under the amended provision, Kennedy's prior conviction for unlawful possession of a machine gun is a crime of violence under the enumerated clause of §4B1.2(a).

This interpretation is consistent with our previous interpretations of § 4B1.2. Prior to the amendment, we treated the crimes "specifically enumerated in Application Note 1" as separate offenses, and not as interpretations of the residual clause of § 4B1.2(a)(2). *United States v. Rodriguez*, 664 F.3d 1032, 1036 (6th Cir. 2011). We therefore recognized three ways in which a prior felony conviction could qualify as a "crime of violence" under of § 4B1.2: (1) the crime is specifically enumerated in the enumerated clause *or in application note 1*; (2) the crime qualifies under the elements clause; or (3) the crime qualifies under the residual clause. *See United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013).

Because Kennedy's prior conviction qualifies as a "crime of violence" under the enumerated clause of the amended provision, we need not consider his argument concerning the

residual clause. Because Amendment 798 applies retroactively and clarifies application of § 4B1.2, and because this circuit has consistently treated offenses listed in the commentary to § 4B1.2 as "specifically enumerated" offenses, we hold that Kennedy's prior conviction for unlawful possession of a machine gun is a "crime of violence" under § 4B1.2 of the Sentencing Guidelines.

## C. Substantive Reasonableness

Kennedy contends that his sentence is substantively unreasonable because the district court disregarded the limited capabilities of the device he manufactured and overstated the risk the device posed to the public. Because the district court's sentence is procedurally unreasonable, we need not reach this argument. *Gall*, 552 U.S. at 51; *see Wilson*, 614 F.3d at 226 ("Having found [defendant's] sentence procedurally unsound, we need not reach this argument [that the sentence was substantively unreasonable].").

## III. CONCLUSION

For the foregoing reasons, we **VACATE** the sentence and **REMAND** for resentencing in light of this opinion.

**McKEAGUE, Circuit Judge, dissenting.** The last time we encountered Kennedy, he raised four challenges to his sentence. *United States v. Kennedy*, 578 F. App'x 582, 593–96 (6th Cir. 2014). We found three meritless. *See id.* But we remanded to the district court "for consideration of Kennedy's argument for a downward variance." *Id.* at 596. He had only one downward-variance argument: that his sentence was "unduly harsh" because the Guidelines counted an earlier conviction twice when setting his sentencing range. *See id.*

On remand, the district court did what we asked: it considered this "double-counting" argument. Ultimately, it rejected the argument and resentenced Kennedy to the same 108-month term. The court stated good reasons for its decision—including that Kennedy had called in a bomb threat to a high school and had a well-documented affinity for illegally possessing and igniting explosives.

Now, however, the majority faults the district court for not addressing Kennedy's new argument that his post-sentencing rehabilitation efforts should lower his sentence. *See Pepper v. United States*, 562 U.S. 476 (2011). The majority holds that the district court had to address this argument because we originally issued a "general remand"—a remand which would let sentencing "begin anew." *See United States v. Garcia-Robles*, 640 F.3d 159, 166 (6th Cir. 2011). You can tell we issued a general remand, the majority contends, because our previous order lacked an "explicit limitation" on the district court's review. *See* Maj. Op at 8–9.

I disagree. We remanded "*for consideration of Kennedy's argument for a downward variance*." *Kennedy*, 578 F. App'x at 596 (emphasis added). As used in our order, the word "for" functioned to indicate the remand's purpose. Why would we state a purpose for remand

19

rather than simply "remanding" or "remanding for resentencing"? Simple: to limit the remand by "explicitly outlin[ing] the issue[] to be addressed by the district court[.]" *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). We had already taken three sentencing issues off the table. We left the lower court to address one—not to start from scratch.

The majority holds otherwise because it contends that our remand order lacked language outlining the "procedure the district court was to follow" and failed to state a "chain of intended events" with sufficient "particularity." Maj. Op at 9–10. But given that we found the district court did everything right the first time, save considering the double-counting argument, what else needed to be said? Our order stated the only "event" or "procedure" necessary: the district court would consider Kennedy's double-counting argument.

Given the remand order's scope, we have no basis to reverse here. The court did not have to consider Kennedy's rehabilitation argument. *See Pepper*, 562 U.S. at 505 n.17 (stating that "limited remand orders . . . may render evidence of post-sentencing rehabilitation irrelevant in light of the narrow purposes of the remand proceeding"). It lacked authority to do so. *See United States v. Williams*, 522 F. App'x 278, 279 (6th Cir. 2013) ("[*Pepper*] does not . . . empower a district court to exceed the scope of a limited remand.").

Because I disagree with majority, I feel obliged to address Kennedy's other challenge: that his sentence is substantively unreasonable. It lacks merit. He simply repeats an argument he made at his first sentencing: that he should receive a downward variance because he made a weak explosive that hurt no one. Kennedy received a sentence within the Guidelines range, however, which makes it presumptively reasonable. *See United States v. Mosley*, 635 F.3d 859,

20

865 (6th Cir. 2011). He cannot point to any mandatory sentencing factor the district court ignored. He essentially invites us to "balance the factors *di[f]ferently* than the district court did." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). But we only review for error—not to rebalance the factors in the way we would prefer. *See id.*

The district court did what we asked. And it stayed within the parameters we set for it. Thus, I dissent.