**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 16-6461

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

NORRIS HOLLOM, )
)
    **Petitioner-Appellant,** )
) **ON APPEAL** FROM THE
v. ) UNITED STATES DISTRICT
) COURT FOR THE WESTERN
UNITED STATES OF AMERICA, ) DISTRICT OF TENNESSEE
)
    **Respondent-Appellee.** ) **OPINION**
)

**FILED**
May 30, 2018
DEBORAH S. HUNT, Clerk

**BEFORE: NORRIS, BATCHELDER, and STRANCH, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Norris Hollom, a federal prisoner proceeding through counsel, appeals the district court's judgment denying his motion to vacate, set aside, or correct his sentence, filed pursuant to 28 U.S.C. § 2255. In 2014, Hollom pleaded guilty to one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court based its Sentencing Guidelines calculation in part on § 2K2.1(a)(2), which provides for a higher base offense level when a defendant has two prior convictions for violent crimes. On appeal, Hollom argues that the convictions that the district court relied upon in applying this sentencing enhancement—aggravated assault in Tennessee—do not constitute crimes of violence, and therefore he is entitled to be re-sentenced. For the reasons that follow, we hold that aggravated assault in Tennessee constitutes a crime of violence for the purposes of the Sentencing Guidelines, and we **affirm** the district court judgment denying Hollom's motion.

## I.

*A.*     *Factual Background*

In February 2013, law enforcement officers responded to gunshots they heard while on an unrelated traffic stop. When they arrived at the scene, they observed petitioner Norris Hollom and another man remove items from their pockets and throw them over a fence. The officers found guns and ammunition on the ground and found a loaded magazine compatible with one of the guns in the sweatshirt Hollom was wearing. Hollom was indicted on one count of felon in possession of a firearm and one count of felon in possession of ammunition, each a violation of 18 U.S.C. § 922(g)(1). Hollom and the government entered into a plea agreement under which the government dropped the firearm possession charge, and Hollom pleaded guilty to the ammunition charge.

At sentencing, the district court treated two of Hollom's prior convictions—guilty pleas in 2001 and 2004 for aggravated assault in Tennessee—as crimes of violence under the Sentencing Guidelines. *See* U.S.S.G. § 2K2.1(a)(2). This resulted in a guidelines sentence of seventy-seven to ninety-six months' incarceration. The district court granted a downward variance under 18 U.S.C. § 3553(a) and sentenced Hollom to fifty-seven months.

Soon after the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), which rendered void for vagueness the residual clause of the Armed Career Criminal Act's definition of a violent felony, Hollom filed a pro se motion with the district court under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. While that motion was pending, the Supreme Court decided *Mathis v. United States*, 136 S. Ct. 2243 (2016), which sought to clarify the process a sentencing court should follow to determine whether a past conviction constitutes a crime of violence. The district court ordered further briefing as to what effect, if any, *Mathis* had on the pending motion.

After briefing, the district court denied Hollom's motion, and later denied his request for a certificate of appealability. On May 8, 2017, this court granted Hollom a certificate of appealability, stating that "reasonable jurists could debate whether Hollom's prior convictions of aggravated assaults in Tennessee are valid prerequisites for sentencing as a career offender under the *Mathis* analysis."

B.      *Sentencing Guidelines*

The Sentencing Guidelines provision used by the district court to enhance Hollom's sentence[1] applies "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). The Sentencing Guidelines define a crime of violence as follows:

>   (a)   The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
>>        (1)   has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>>        (2)   is a burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (Nov. 1, 2014). Subsection (1) is often referred to as the "elements" clause or "use-of-force" clause, and subsection (2) has two clauses: the first part is the "enumerated-offense" clause, and the second part is the "residual" clause.[2] In addition to the offenses in the "enumerated-

---

[1] The parties agree that the Sentencing Guidelines from 2014 apply to this case.

[2] There is an analogous residual clause in the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e)(2)(B). As mentioned, the Supreme Court held that the ACCA residual clause was void for vagueness, *Johnson*, 135 S. Ct. at 2563, but the residual clause in the Sentencing Guidelines survived a similar challenge, *Beckles v. United States*, 137 S. Ct. 886, 895 (2017). Nevertheless, the Sentencing Commission later removed the residual clause. *See* U.S.S.G. § 4B1.2(a)(2) (Aug. 1, 2016). Both parties acknowledge that the Guidelines' residual clause was operational at the time of Hollom's sentencing.

offense" clause, the Application Note lists additional predicate offenses: "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2 cmt n.1. The Sentencing Commission later consolidated the Application Note offenses into the Guidelines, but even "[p]rior to the amendment, we treated the crimes 'specifically enumerated in Application Note 1' as separate offenses." *United States v. Kennedy*, 683 F. App'x 409, 419 (6th Cir. 2017) (quoting *United States v. Rodriguez*, 664 F.3d 1032, 1036 (6th Cir. 2011)).

C.      *Tennessee Aggravated Assault*

The applicable Tennessee simple assault statute provides:

(a)     A person commits assault who:

    (1)  Intentionally, knowingly or recklessly causes bodily injury to another;

    (2)  Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

    (3)  Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101 (1998). The *aggravated* assault statute adds:

(a)     A person commits aggravated assault who:

    (1)  Intentionally or knowingly commits an assault as defined in [the simple assault statute] § 39-13-101 and:

        (A)  Causes serious bodily injury to another; or

        (B)  Uses or displays a deadly weapon; or

    (2)  Recklessly commits an assault as defined in § 39-13-101(a)(1), and:

        (A)  Causes serious bodily injury to another; or

        (B)  Uses or displays a deadly weapon.

. . . .

4

> (d)(1)Aggravated assault under subdivision (a)(1) . . . is a Class C felony. Aggravated assault under subdivision (a)(2) is a Class D felony.

Tenn. Code Ann. § 39-13-102 (1998).

## II.

"We determine a 'crime of violence' under the Guidelines in the same way as a 'violent felony' under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because both share essentially the same definitions." *United States v. Gibbs*, 626 F.3d 344, 352 n.6 (6th Cir. 2010) (citing *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008)).

When evaluating a criminal conviction to determine whether it qualifies as a crime-of-violence predicate for the ACCA or the Sentencing Guidelines, sentencing courts are directed to use a categorical approach, looking "only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990). "[A] sentencing judge may look only to the elements of the offense, not to the facts of the defendant's conduct." *Mathis*, 136 S. Ct. at 2251 (cleaned up).

This is straightforward for simple criminal statutes, but others provide disjunctive, either-or elements, and so are divisible into multiple versions of a crime. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). If a statute is divisible, meaning that it "comprises multiple, alternative versions of the crime," a court uses a "modified categorical approach" and may "examine a limited class of documents," such as the indictment, a plea agreement, or jury instructions, "to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Id.* at 2284. "[T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id.* at 2285.

The Supreme Court recently reinforced the rule that courts must not analyze a statute by using a modified categorical approach that considers alternative *means* of committing a crime, rather than alternative *elements*. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). Under *Mathis*, "[t]he first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means. If they are *elements*, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction . . . ." *Id.* (emphasis added). "But if instead they are *means*, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.* (emphasis added). "[A] statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)" or perhaps "a state court decision definitively answers the question" and so "a sentencing judge need only follow what it says." *Id.*

The elements of the statute here seem clear from the text, and the Tennessee Supreme Court has confirmed: "Aggravated assault . . . consists of three elements: (1) *mens rea*; (2) commission of an assault as defined in 39–13–101; and (3)(a) serious bodily injury or (b) use or display of a deadly weapon." *State v. Hammonds*, 30 S.W.3d 294, 298 (Tenn. 2000). It is evident that the third element is divisible into two alternative elements: "serious bodily injury" and "use or display of a deadly weapon."

The second element is not so simple. The underlying simple assault statute may be alone divisible into three alternative elements, but when the charged crime is aggravated assault, the defendant's conduct that constituted the underlying simple assault is merely the *means* by which that element of aggravated assault is satisfied—not an *element* itself. *Id.* at 302. In *Hammonds*, the

Tennessee Supreme Court considered the validity of an aggravated assault indictment, and reasoned:

> The indictment alleges the first element of the offense *mens rea*—"intentionally and knowingly." The indictment also alleges the second element of the offense, commission of an assault—"did . . . commit an assault." And finally, the indictment alleges the third element of the offense, use or display of a deadly weapon—"using and displaying a deadly weapon." As previously explained, prior decisions of this Court do not require the State to specify in the indictment the precise *means* or theory by which the State intends to establish each *element* of the offense.

*Id.* (emphasis added); *accord United States v. Perez-Silvan*, 861 F.3d 935, 940 (9th Cir. 2017) ("[*Hammonds*] indicates that the second element of aggravated assault is indivisible. Thus, courts cannot employ the modified categorical approach to determine which variant of simple assault under § 39–13–101 the defendant has committed.").

Once a divisible statute is divided into the appropriate alternative elements, a sentencing court considers the possible means of violating the statute and must "assume that [the defendant's] 'conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts' would qualify as a crime of violence under the guidelines." *United States v. Yates*, 866 F.3d 723, 728 (6th Cir. 2017) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 133 (2013) (cleaned up)).

Considering the least of the acts criminalized by aggravated assault in Tennessee, the simple assault statute can include when one "[i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101(a)(3) (1998). This physical contact then may be escalated to aggravated assault by the "*display* of a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B) (1998) (emphasis added).

7

A crime may qualify as a crime of violence if "the crime has as an element the use, attempted use, or threatened use of physical force." *Rodriguez*, 664 F.3d at 1036 (citing U.S.S.G. § 4B1.2(a)).

> Other circuits have held that even a general-intent crime may include the threatened use of physical force as an element if it includes the use of a deadly weapon as an element. *See, e.g.*, *United States v. Ramon Silva*, 608 F.3d 663, 670–71, 674 (10th Cir. 2010). Most of these cases deal with assault or battery statutes that require only "the least touching," but qualify as crimes of violence when the touching is accompanied by a deadly weapon. *See United States v. Grajeda*, 581 F.3d 1186, 1191–92 (9th Cir. 2009); *United States v. Dominguez*, 479 F.3d 345, 348–49 (5th Cir. 2007) . . . .
>
> Not every crime becomes a crime of violence when committed with a deadly weapon, however. *See, e.g.*, *United States v. Baker*, 559 F.3d 443, 452 (6th Cir. 2009) (holding that Tennessee felonious reckless endangerment, which requires the use of a deadly weapon, was not a crime of violence). Similarly, not all crimes involving a deadly weapon have the threatened use of physical force as an element. *Id.* In the crime of violence context, "the phrase 'physical force' means violent force," *Johnson*, 130 S. Ct. at 1270–71, and the use of a deadly weapon may transform a lesser degree of force into the necessary "violent force." Nonetheless, the underlying crime must already have as an element some degree of, or the threat of, physical force in the more general sense (such as "the least touching").

*Rede-Mendez*, 680 F.3d at 558 (citation and footnotes omitted).

Despite Hollom's suggestions to the contrary, we need not imagine some perfect crime that includes the least touching married with peacefully displaying a weapon such as a holstered firearm. The least of the acts criminalized includes not only the least touching, but a touching that a reasonable person would find extremely offensive or provocative. "We focus on the least culpable conduct criminalized by the statute but [must] resist imagining unlikely crimes that theoretically could be covered by it." *United States v. Verwiebe*, 874 F.3d 258, 260–61 (6th Cir. 2017). "There must be a realistic probability the statute would be used to criminalize the conduct." *Id.* at 261 (citing *Moncrieffe*, 569 U.S. at 191).

The Ninth Circuit recently considered whether Tennessee aggravated assault constitutes a crime of violence, and its reasoning is helpful:

> Perez-Silvan maintains that his aggravated assault conviction does not qualify as a crime of violence because the second element of aggravated assault in § 39–13–102(a)(1), which requires the commission of a simple assault in violation of § 39–13–101, can be fulfilled by "[i]ntentionally or knowingly caus[ing] physical contact with another [that] a reasonable person would regard . . . as extremely offensive or provocative." Tenn. Code Ann. § 39–13–101(a)(3).

> Perez-Silvan is correct that "mere[ ] touching," the common law definition of a battery, does not satisfy the level of force required for a crime of violence. *Johnson v. United States*, 559 U.S. 133, 139–43, 130 S. Ct. 1265, 176 L.Ed.2d 1 (2010). According to *Johnson*, in the context of a crime of violence, "physical force" entails "violent force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140, 130 S. Ct. 1265. Thus, on its own, an offensive "physical contact" in § 39–13–101(a)(3) would not qualify as a crime of violence.

> Nonetheless, Perez-Silvan misunderstands his statute of conviction. Even though an offensive touching under § 39–13–101(a)(3) can satisfy the second element of § 39–13–102(a)(1), an aggravated assault conviction further requires that the offensive touching "[c]ause[ ] serious bodily injury to another" or "use[ ] or display[ ] a deadly weapon." Tenn. Code. Ann. § 39–13–102(a)(1)(A)–(B); *see also Hammonds*, 30 S.W.3d at 298. Both of these requirements entail the use of violent force.

*Perez-Silvan*, 861 F.3d at 942-43. "[R]egardless of whether the deadly weapon itself touches the victim's body, we cannot imagine one using or displaying a deadly weapon in the course of an offensive touching without threatening the use of violent force." *Id.* at 943.

We agree with the Ninth Circuit's reasoning and join it in holding that extremely offensive or provocative touching, coupled with the use or display of a deadly weapon, includes an implied threat of force sufficient to constitute a crime of violence under the Sentencing Guidelines. Therefore, we hold that a conviction for aggravated assault under Tenn. Code Ann. § 39-13-102 categorically qualifies as a crime-of-violence predicate under the use-of-force clause found in U.S.S.G. § 4B1.2(a). We need not consider the applicability of any of § 4B1.2(a)'s other clauses.

## III.

The judgment of the district court is **affirmed**.